UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

LYDIA G.T.,

                          Plaintiff,

           v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                     Defendant.

―――――――――――――――――――――

**DECISION AND ORDER**
23-CV-630-A

## I.    INTRODUCTION

Plaintiff Lydia G.T. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. # 6) and the Commissioner (Dkt. # 7) have filed cross-motions for judgment on the pleadings. For the reasons set forth below, the Plaintiff's motion is **GRANTED**, to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  The Commissioner's motion is **DENIED**.

### A.  Procedural History

On September 28, 2020, Lydia G.T. ("Plaintiff") filed an application for SSI benefits pursuant to Title XVI of the Social Security Act ("the Act"), 42 U.S.C., Chapter 7, alleging disability as of August 18, 2016, due to PTSD, panic disorder,

social anxiety disorder, severe chronic depression, fibromyalgia, neuropathy, traumatic brain injury, and COPD.  T. 86-87.[1]  The claim was initially denied on January 4, 2021, and upon reconsideration on July 7, 2021. T. 122, 133. Plaintiff requested a hearing, and on May 19, 2022, both Plaintiff and a vocational expert testified before Administrative Law Judge ("ALJ") Stephen Cordovani.  T. 47-85.  On June 20, 2022, the ALJ issued an unfavorable decision. T. 13-46. Plaintiff timely appealed the ALJ's decision to the Appeals Council, and on May 5, 2023, the Appeals Council denied Plaintiff's request for review. T. 1-7. This action ensued.

### B. Factual Background

#### 1. Plaintiff's Physical Health

Plaintiff, who was born in 1976, T. 86, underwent a consultive exam by Dr. Hongbiao Liu on May 6, 2021.  T. 626. Upon examination, Plaintiff walked slowly with cane dependence. T. 628. She was unable to perform heel and toe walking. *Id*.

---

[1]    References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case, set forth as Dkt. #5 on the Docket.

The Court notes that the instant application represents the second time that Plaintiff made application for SSI benefits.  Previously, on November 1, 2013, Plaintiff filed an application for SSI benefits, claiming that she became totally disabled on January 15, 2013, due to Plaintiff alleged disability due to bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, obsessive-compulsive disorder ("OCD"), spina bifida, fibromyalgia, asthma, osteoarthritis, sciatica, cataracts and hashimoto thyroiditis. That original application resulted in an initial denial on December 24, 2013. After a hearing before an Administrative Law Judge, an unfavorable decision was issued on August 12, 2016. The Appeals Council denied a request for review on December 8, 2017. The claim was brought to District Court but the prior decision denying Plaintiff benefits was affirmed on September 30, 2019. T. 17. *See*, *Truesdell v. Saul*, No. 1:18-CV-0198 CJS, 2019 WL 4750554 (W.D.N.Y. Sept. 30, 2019).

She exhibited limited range of motion of her cervical and lumbar and spine. T. 628-29. The exam notes indicated that Plaintiff exhibited "[s]houlder forward elevation 140 degrees bilaterally, abduction 140 degrees bilaterally, adduction 20 degrees bilaterally, internal rotation 30 degrees bilaterally, and external rotation 80 degrees bilaterally." T. 629. Her remaining joints exhibited a full range of motion. *Id*. She had a total of 12 trigger points throughout her neck, low back, and bilateral hips. *Id*.

Plaintiff reported that she was given the cane by Dr. Giglio in 2020, and that she used the cane all the time, indoors and outdoors to limit her pain. T. 628. Dr. Liu opined that Plaintiff's use of a cane was medically necessary. *Id*. Dr. Liu further opined that Plaintiff had moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing. T. 629-30.

On May 18, 2022, Dr. Giglio completed a physical treating medical source statement. T. 1403. Dr. Giglio noted that he had been treating Plaintiff every 2-5 months since 2014. *Id*.  Plaintiff's diagnoses included low back pain, carpal tunnel bilateral, depression, neuralgia, migraines intractable 20 or more per month, right knee pain, cervicalgia, seizures, memory loss, concentration difficulty, balance difficulty, severe painful neuropathy requiring multiple seizure medications, superventricular tachycardia, and traumatic brain injury. *Id.* Dr. Giglio noted that Plaintiff's chronic problems had been stabilized but would not improve. *Id.*  Her symptoms included head pain, back pain, neck pain, memory problems, brain fog, tiredness from medications, joint pain, numbness in her hands, especially her right

hand, losing grip of things and dropping things constantly. *Id*. He noted that Plaintiff experienced pain in multiple areas, including her neck, back, and head. *Id*. He noted that the severity of Plaintiff's pain was 7-8/10 on most days, and that activity such as walking, bending, and sitting more for that a couple of minutes made it worse. *Id*. He noted that Plaintiff was most comfortable when lying down. *Id*.

Dr. Giglio noted that clinical findings and objective signs included antalgic gait, tinel and phalen signs, positive EEGs, years of documented headaches requiring infusions at times, decreased range of motion and pain on palpation in her lumbar and cervical spine, and multiple images supporting her back issues. *Id*. He noted that Plaintiff's medications included Lyrica, gabapentin, Lamotrigine, duloxetine, indomethacin, methocarbamol, Amitriptyline, Reglan, and Klonopin. *Id*.

Dr. Giglio opined that Plaintiff's depression, anxiety, personality disorder and trichotillomania affected her physical condition. T. 1403-04. He opined that Plaintiff's experience of pain or other symptoms would be severe enough constantly to interfere with her attention and concentration. T. 1404. He opined that Plaintiff would be capable of low stress jobs. *Id*. Dr. Giglio opined that Plaintiff could walk one half block before needing to rest or having severe pain, and that she could sit for 10 minutes at one time and stand for five minutes at one time before needing to change positions. *Id*. Dr. Giglio opined that Plaintiff could sit for about two hours total in the workday, and stand/walk for about two hours total in the workday. T. 1405. He opined that Plaintiff would need periods of being able to walk around for a minute or two, every five minutes. *Id*. He further opined that Plaintiff would need to be allowed

to switch positions at will. *Id*. He opined that Plaintiff would need to take unscheduled breaks for 10-20 minutes at a time. *Id*. He further opined that Plaintiff's legs would need to be elevated at 45 degrees whenever she is sitting. *Id*.

Dr. Giglio opined that Plaintiff could occasionally lift and carry less than 10 pounds, and rarely lift and carry 10 pounds. *Id*. He opined that Plaintiff could occasionally look down, rarely turn her head to the left or right, rarely look up, and frequently hold her head in a static position. T. 1406. Dr. Giglio opined that Plaintiff could occasionally climb stairs, rarely twist, and never stoop, crouch/squat, or climb ladders. *Id*. He opined that Plaintiff could use her right hand to grasp, twist and turn objects 10% of the workday, and 25% of the workday with her left hand. *Id*. He opined that she could use her right hand for fine manipulations 10% of the time, and use her left hand 50% of the time, and that she was unable to use either arm for reaching. *Id*. Dr. Giglio opined that Plaintiff's impairments would likely produce "good days" and "bad days."  *Id*.

### 2.  Plaintiff's Mental Health

On May 16, 2022, Licensed Mental Health Counselor Hannah Braun, who had treated Plaintiff on a bi-weekly basis since June 2021, completed a treating medical source statement. T. 1430. She noted that Plaintiff's diagnoses included persistent depressive disorder (dysthymia), and other specified trauma-and-stressor related disorder. *Id*. She noted that Plaintiff was engaged with treatment and responded well to interventions, but often missed appointments due to childcare and conflicts. *Id*. She noted that Plaintiff's medications included Clonazepam, Cymbalta,

5

and Trintellix. *Id*. LMHC Braun opined that Plaintiff's mood and trauma-related symptoms, including panic attacks, would make her unable to engage in full-time competitive employment. *Id*.  She opined that Plaintiff psychological conditions created some moderate and some marked limitations.  T. 1432-33.   She  opined that Plaintiff was totally precluded from maintaining regular attendance and being punctual within customary, usually strict tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, and traveling to unfamiliar places or using public transportation. *Id*.  LMHC Braun explained that Plaintiff's limitations were caused by her depressed mood, low energy, and trauma-related panic attacks that impacted her concentration and memory; anxiety related to her trauma made it difficult for Plaintiff to interact and trust others; and her trauma caused significant impairment with traveling to unfamiliar places. T. 1433. LMHC Braun opined that Plaintiff's psychiatric condition exacerbated Plaintiff's pain or other physical symptoms. *Id*.

On February 15, 2021, Licensed Clinical Social Worker (LCSW) Christine Amabile completed a medical examination for employability assessment. T. 666. She noted that Plaintiff's conditions included posttraumatic stress disorder, unspecified anxiety disorder, and borderline personality disorder. *Id*. It was further noted that Plaintiff had been receiving bi-weekly treatment at Horizon Health Services for 79 months. T. 667.

LCSW Amabile opined that Plaintiff was moderately limited in the following areas of mental functioning: understands and remembers instructions; carries out

instructions; makes simple decisions; interacts appropriately with others; maintains socially appropriate behavior without exhibiting behavior extremes; and maintains basic standards of personal hygiene and grooming. *Id*. She further opined that Plaintiff was very limited in the following areas of mental functioning: maintains attention and concentration; and appear able to function in a work setting at a consistent pace. *Id*.

During an exam with Dr. Michael Slater on July 28, 2020, Plaintiff indicated that "she was very stressed out due to her homeless daughter," and the doctor discussed with Plaintiff her need to address her coping skills. T. 404-405.

During a psychiatric evaluation on May 6, 2021, Dr. Susan Santarpia determined that Plaintiff exhibited mild impairment in regulating emotion, controlling behavior, and maintaining well-being.  T. 621-625. Dr. Santarpia attributed such difficulties to Plaintiff no longer taking "psychotropic medication that was once controlled/stabilizing." T. 624.  Plaintiff was found to be "able to understand, remember, and apply simple as well as complex directions and  instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions within normal limits." *Id*.  The doctor concluded that the results of her "present evaluation appear to be consistent with psychiatric

problems, but in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  T. 624.

Treatment records from BestSelf Behavioral Health reveal that many of Plaintiff's complaints in therapy stemmed from her living arrangement, family issues, relationship issues, and her pursuit of a college degree. T. 949, 1032, 1045.Those records also indicate that Plaintiff responded well to treatment for her mental health issues through individual counseling treatment and drug therapies. T. 928-930, 949. She reported no difficulty in taking care of things at home or in getting along with others. T. 910.

In terms of her daily living, Plaintiff reported that she was the primary caregiver for two of her children, managed money, grocery shopped online, engaged in hobbies (such as like watching television, listening to music, and browsing online and social media), and helped her children with their homework. T. 268-72, 623-24, 627.

## C.  The ALJ's Decision

Using the five-step sequential analysis in 20 C.F.R. § 416.920(a), the ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since September 28, 2020, her SSI application date. T. 19. At step two, the ALJ determined that Plaintiff's severe impairments were: asthma; chronic obstructive pulmonary disease (COPD); fibromyalgia; migraines; degenerative disc disease of the cervical spine; plantar fasciitis; supraventricular tachycardia; major depressive

disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and borderline personality disorder. T. 19-20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix (the Listings). T. 20-23.

Before proceeding to step four of the sequential evaluation process, the ALJ determined that, despite Plaintiff's impairments, she could perform light work, except that:

- Her ability to stand and/or walk is limited to four hours total;
- She can occasionally climb ramps and stairs;
- She can never climb ladders, ropes, or scaffolds;
- She can occasionally balance, kneel, crouch, and crawl;
- She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants;
- She must avoid work around hazards, such as unprotected heights and dangerous moving mechanical parts;
- She requires use of a cane for ambulation;
- She can understand, remember and carry out simple and routine instructions and tasks;
- She can maintain attention and concentration and regular attendance for simple routine work;
- She cannot perform independent decision making; and
- She can have occasionally interaction with supervisors, co-workers, and the general public.

T. 23-38.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a sales attendant retail. T. 38.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, jobs exist in the national economy which Plaintiff could perform, including the representative jobs of price marker, sandwich maker, and silver wrapper. T. 38-39. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. T. 40.

### D. The Parties' Contentions

In seeking this Court's review of the ALJ's determination, Plaintiff argues that the ALJ failed to support his decision with substantial evidence. In particular, Plaintiff contends: (1) that the ALJ erred when he failed to explain why the overhead reaching limitation included in Dr. Liu's opinion was not incorporated into the RFC finding; and (2) that the ALJ further erred in his evaluation of the opinions provided by Plaintiff's treating providers by improperly discounting the opinion of LMHC Braun as not being an acceptable medical source and failing to acknowledge or discuss the consistencies between the disability-supporting opinions before categorically rejecting them. Dkt. #6-1, pp. 11-20.  Defendant responds that the ALJ committed no error, and that since substantial evidence supports the ALJ's decision, it should be affirmed.  Dkt. # 7-1, pp. 7-18.

### II.   LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence

in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision.   *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III.   ANALYSIS

####   A. The ALJ's Decision Regarding Any Overhead Reaching Limitation Was Not Supported By Substantial Evidence

Plaintiff initially asserts that the ALJ erred in failing to explain why the overhead reaching limitation included in Dr. Liu's opinion was not incorporated into the RFC finding.  Plaintiff further argues that this error was particularly harmful because all the representative jobs cited by the vocational expert and relied upon by the ALJ at step five required at least frequent reaching. Dkt. #6-1, pp. 11-17.  The Court agrees with Plaintiff.

At the hearing, Plaintiff testified to the following limitations regarding reaching under questioning by her attorney:

> Q:   Ma'am, do you have any difficulty putting your arms directly in front of you -- reaching cut in front of you?
>
> A:   Yes, I -- I have great difficulty with doing that.
>
> Q:   How long can you hold that position for, then, ma'am?
>
> A:   Only a few seconds.
>
> Q:   Ma'am, is it difficult for you to put your arms – lift your arms up over your head as if you're raising your hands?
>
> A:   Yes, but that's not a capability that I have.

T. 64-65.

In addition, during his examination of Plaintiff, Dr. Liu was able to quantify the limitations to the range of motion experience by Plaintiff in her shoulder—"[s]houlder forward elevation 140 degrees bilaterally, abduction 140 degrees bilaterally,

adduction 20 degrees bilaterally, internal rotation 30 degrees bilaterally, and external rotation 80 degrees bilaterally."  T. 629.[2]

After examining Plaintiff, Dr. Liu opined that Plaintiff had moderate limitations in prolonged walking, bending, kneeling, squatting, lifting, carrying, *reaching overhead*, prolonged sitting, standing, and stair climbing, and should avoid respiratory irritants and hazards. T. 626-30 (emphasis supplied). The ALJ found Dr. Liu's opinion to be  supported by—and consistent with—the medical evidence. T. 34-35.  Included in that medical evidence—but unmentioned by the ALJ, was evidence from Dr. Daniel Salcedo, one of Plaintiff's treating physicians, who, during an examination in May of 2018, diagnosed Plaintiff with impingement syndrome in her left shoulder. T. 1251-1252.

The ALJ further found that Plaintiff had "residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except her ability to stand and/or walk is limited to four hours total; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally balance, as that term is defined in the SCO; she can occasionally kneel, crouch, and crawl; she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; she must avoid work around hazards, such as unprotected

---

[2] "'Normal forward flexion of the shoulder is 180 degrees, normal extension is 50 degrees, normal abduction is 180 degrees, normal adduction is 50 degrees.' *Nunez v. Berryhill*, 2017 WL 3495213, *3, n. 22 (W.D.N.Y. 2017) (citing Stacie J. Fruth, Fundamentals of the Physical Therapy Examination: Patient Interviews and Tests & Measures, 263 (2d ed. 2018)).'" *Rebecca L. B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0425 (JJM), 2021 WL 2548596, at *2 (W.D.N.Y. June 22, 2021).

heights and dangerous moving mechanical parts; she requires use of a cane for ambulation; she can understand, remember and carry out simple and routine instructions and tasks; she can maintain attention and concentration and regular attendance for simple routine work; she cannot perform independent decision making; she can occasionally interaction with supervisors, co-workers, and the general public." T. 23.

Except for the reaching limitation found by Dr. Liu, the RFC crafted by the ALJ accounted for each of the moderate physical limitations recognized by Dr. Liu.  It is well-settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013); *see also Young v. Berryhill*, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.' " *Nieves v. Commissioner of Social Security*, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting Tricarico v. Colvin*, 681 Fed. Appx. 98, 101 (2d Cir. 2017)).

Here, despite Plaintiff's direct testimony about her reaching limitations at the hearing and despite the ALJ's conclusion that Dr. Liu's opinion—including presumably the reaching limitation—was "consistent with the record based on the claimant's persisting pain symptoms," and "[a]s such… supported by the medical

evidence," the ALJ failed not only to include the reaching limitation as part of his RFC but failed to explain his reason or reasons for not including it.  Significantly, the ALJ's RFC did account for all of the other physical limitations set forth in Dr. Liu's opinion. In that regard, the light work designation addressed Dr. Liu's limitation regarding lifting and carrying,[3] while the RFC addressed the following limitations found by Dr. Liu: walking; bending, kneeling, and squatting (through the RFC's limitation regarding "kneel[ing], crouch[ing], and crawl[ing]"); prolonged sitting; standing; and stair climbing; and avoidance respiratory irritants and hazards.  The only limitation found by Dr. Liu that the ALJ failed to address was *reaching overhead*. Further, the very limitation opined by Dr. Liu's regarding limitations in Plaintiff's shoulder mobility were supported by a diagnosis from Dr. Salcedo, a physician who treated Plaintiff and determined that she suffered from impingement syndrome in her shoulder. T. 1251-1252.  Moreover, in his hypothetical to the vocational expert, the ALJ failed to include any restriction involving reaching overhead. T. 78. Consequently, on the record before it, this Court is unable to determine whether the ALJ's failure to address this limitation, as opined by Dr. Liu, in the RFC was intentional or an oversight.

---

[3] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). It requires a good deal of walking or standing, on and off, for a total of approximately six hours in an eight-hour workday, with sitting occurring intermittently the remainder of the time. *Id*. Or, light work may involve sitting most of the time with some pushing and pulling of arm or leg controls. *Id*. The ability to perform light work also encompasses an ability to perform sedentary work, absent additional factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

"When an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted." *Rebecca L. B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0425 (JJM), 2021 WL 2548596, at *3 (W.D.N.Y. June 22, 2021)(citing *Dioguardi v. Commissioner of Social Security*, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruling 96-8p (1996)"). An ALJ's decision is supported by substantial evidence where it "rests on adequate findings supported by evidence having rational probative force." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Here, the Commissioner argues that the light work limitation imposed by the ALJ is sufficient account for the overhead reaching limitation imposed by Dr. Liu. The Court recognizes that there is authority in this District for the proposition that moderate limitations may be accounted for by limiting a Plaintiff to light work. *See, e.g., Monserrate B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-700-DB, 2021 WL 2587249, at *5 (W.D.N.Y. June 24, 2021)("[T]he ALJ reasonably and properly accounted for Dr. [Liu]'s opinion of [a]… moderate limitation in reaching…by limiting Plaintiff to light work."); *Pinkowski v. Comm'r of Soc. Sec.*, No. 1:19-CV-00173 EAW, 2020 WL 1969312, at *4 (W.D.N.Y. Apr. 24, 2020)("Moderate limitations ... are frequently found to be consistent with an RFC for a full range of light work."); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding opinion of moderate limitations in "heavy lifting, bending, reaching, pushing, pulling,

or carrying" consistent with RFC assessment for light work).").  However, in this case, a legitimate question exists whether the "light work" requirement imposed by ALJ may, in fact, be found to be consistent with Dr. Liu's opinion regarding Plaintiff's overhead reaching limitation. The uncertainty here is only compounded by the fact that all the jobs relied upon by the ALJ at Step Five require "frequent" or "constant reaching." T. 39. As the Chief Judge of this Court recently observed:

> There is conflicting case law on the issue of whether a restriction to performing an activity "frequently" accommodates a moderate limitation. Compare *Tomaszewski v. Berryhill*, No. 18-CV-728-HKS, 2019 WL 5853404, at *3 (W.D.N.Y. Nov. 8, 2019) ("[T]his Court has held that 'a moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity.' " (citation omitted)), with *Steven C. v. Comm'r of Soc. Sec.*, 592 F. Supp. 3d 132, 140 (W.D.N.Y. 2022) ("Courts in this district have found mild to moderate hand limitations to be inconsistent with the ability to frequently reach, handle, and finger.") (alteration omitted) (quoting *James B. v. Saul*, No. 19-CV-6493F, 2021 WL 615855, at *5 (W.D.N.Y. Feb. 17, 2021))… .

*Kimberly J. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06090 EAW, 2024 WL 1250229, at *5 (W.D.N.Y. Mar. 25, 2024).  Here, had the ALJ explained: (1) why the overhear reaching limitation was the only limitation opined by Dr. Liu that was unmentioned in the RFC; and/or (2) whether and why he believed the "light work" restriction adequately addressed the overhead reaching limitation opined by Dr. Liu, the Court would be able meaningfully to review the ALJ's determination. Unfortunately, on the record as it presently exists the Court cannot engage in such a review.

As another Judge on this Court observed in a similar case, "[a]lthough [the] ALJ [] was not required to accept Dr. Liu's [] opinion[] concerning overhead reaching,

he *was* required to support his determination with substantial evidence, that is, a 'sufficient explanation' resting on "adequate findings supported by evidence having rational probative force". *Rebecca L. B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0425 (JJM), 2021 WL 2548596, at *3 (W.D.N.Y. June 22, 2021)(citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (noting that an ALJ's decision is supported by substantial evidence where it "rests on adequate findings supported by evidence having rational probative force").  Without knowledge of the reason why the ALJ's decision does not include the overhead reaching limitation in the RFC, this Court cannot determine on this record whether such decision is supported by evidence that has "rational probative force." *Id*. Accordingly, remand is required.

### B. The ALJ's Decision Finding The Opinion Of Plaintiff's Psychologist To Be Unpersuasive Is Supported By Substantial Evidence

Since the case is being remanded for further consideration, the Court will briefly address Plaintiff's second contention that the ALJ erred in determining that the opinion offered by Plaintiff's mental health counselor, Hannah Braun. Based upon this Court's review of the record, the Court finds that the ALJ provided numerous, adequate reasons for finding this opinion unpersuasive.

First, the ALJ noted that Ms. Braun's opinion was neither consistent with nor supported by the record, stating that it "is not supported by the medical evidence, given that she suggests marked-level limitations, but mental status examinations were consistently benign across the claimant's longitudinal treatment." T. 36 (citing T. 467-606 [treatment notes from Horizon Health], T. 621-25 [Dr. Santarpia's mental

status examination and resultant opinion], and T. 901-1195 [treatment notes from Ms. Braun's office]. The ALJ also explained that Ms. Braun's opinion was unpersuasive because Plaintiff's "admitted activities of daily living suggest greater ability." T. 36.  These were proper bases for the ALJ's decision to find finding the opinion unpersuasive. 20 C.F.R. § 416.920c(c)(1)-(2) (stating that the more objective medical evidence and supporting explanations presented by a medical source to support his medical opinion, and the more consistent a medical opinion is with the evidence from other medical sources, the more persuasive the opinion will be).

Lastly, regardless of whether the ALJ was correct in his assessment that that Ms. Braun was "not an acceptable medical source," T. 36; *see, Dorothy B. v. Comm'r of Soc. Sec.*, 692 F. Supp. 3d 55, 68 (W.D.N.Y. 2023), the ALJ did unquestionably consider Ms. Braun's opinion and find it unsupported by, and inconsistent with, the overall evidence, such as the mental status examinations and Plaintiff's activities of daily living. Thus, the ALJ found the opinion unpersuasive using the appropriate regulatory factors. T. 26; *see* 20 C.F.R. § 416.920c(b)(2). As such, the ALJ's determination in this regard is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. # 6) is **GRANTED** to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  The Commissioner's opposing motion for judgment on the pleadings (Dkt. # 7) is **DENIED**. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

                                        __*s/Richard J. Arcara*_____
                                        HONORABLE RICHARD J. ARCARA
                                        UNITED STATES DISTRICT COURT

Dated:  September 27, 2024
          Buffalo, New York